**ALLIED SPECIALTY INSURANCE, INC., Plaintiff,**

v.

**OHIO WATER PARKS, INC., etc., Defendant.**

**No. 88–566–CIV–T–17(B).**

United States District Court, M.D. Florida, Tampa Division.

Nov. 16, 1988.

William P. Gregory, Tampa, Fla., for plaintiff.

Robert J. Asti, Lau, Lane, Pieper & Asti, Tampa, Fla., for defendant.

## ORDER ON MOTION TO DISMISS

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant's motion to dismiss filed August 12, 1988, and response thereto filed August 22, 1988. Defendant asserts that the Court lacks *in personam* jurisdiction over it; that service of process is defective; and alternatively, even if there is jurisdiction and appropriate service of process, the cause should be transferred to the United States District Court for the Northern District of Ohio (at Akron).

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that Plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78

S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). A trial court, in ruling on a motion to dismiss, is required to view the complaint in the light most favorable to the Plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1947).

Complaint was filed in this cause on April 25, 1988. The complaint alleges that Defendant entered into certain insurance contracts in St. Petersburg, Florida; that all payments are due to be paid in St. Petersburg, Florida; and that Defendant owes Plaintiff $12,661.19, plus interest.

The motion to dismiss and opposition thereto alleges the following facts as applicable to the issue here:

1. Defendant operates a water theme park called Dover Lake Park, in Sagamore Hills, Summit County, Ohio. The park includes 54 acres and 13 acres of parking, a nine flume water slide, picnic areas, volleyball and softball areas, swimming, a wave pool, and campground.

2. In order to comply with insurance requirements statutorily mandated by the State of Ohio, Defendant is required to obtain general liability insurance. Plaintiff advertised in a nationally circulated trade publication called "The Splash" and claimed to be able to arrange for the provision of such insurance.

3. Defendant, as a result of that advertising solicitation, telephoned Plaintiff and obtained from them an application form, sample claim form, and sample general liability policy form, which Plaintiff apparently provided as agent for T.H.E. Insurance Company (T.H.E.). As a result, Plaintiff and Defendant negotiated and Defendant obtained coverage for the water park through T.H.E. Negotiations between Plaintiff and T.H.E., for obtaining the insurance took place in Florida.

4. Prior to the issuance of the policy, an agent of Plaintiff and T.H.E. went to Ohio and inspected the water park. The policy was issued May 26, 1987, by T.H.E. through Plaintiff as its agent. The policy was effective from May 18, 1987, through May 18, 1988.

5. On July 21, 1987, the policy was delivered to Defendant, as was a statement of premium of even date. The amount of the premium was $106,025.00. Defendant had deposited $25,496.00 by wire transfer. The policy listed Plaintiff as the producer, with a Florida address and T.H.E. as the Company, with a New Orleans, Louisiana address.

6. Premiums were due on a monthly basis, on the fifteenth of the month, the payments were to be sent to Plaintiff in St. Petersburg, Florida, and the premiums were payable to T.H.E. All premiums were paid by wire transfer or check from Defendant to St. Petersburg, Florida.

7. The policy contained a provision that referred to the inspection of amusement devices and activities. The State of Ohio regulates such inspections pursuant to Sections 1711.50–1711.99, Ohio Revised Code.

8. The insurance policy contains no clause which delineates which state's law is applicable to disputes.

9. T.H.E. is licensed to do business in State of Ohio and is subject to statutes and regulations of the state regarding the insurance industry.

10. In Ohio, an insurance company may do business only upon satisfying the requirements of Title 39 (Insurance), Ohio Revised Code, and regulations pursuant thereto. Chapter 3901 requires an insurer, conducting business in Ohio, to register with the Ohio Superintendent of Insurance. Section 1711.54, Ohio Revised Code, requires an insurer of amusement parks be authorized to do business in Ohio and to be registered with the Ohio Superintendent of Insurance.

11. On July 30, 1987, a controversy arose and Defendant was notified of reservation of rights for breach of contract by an entity called All Risk Claims Service, Inc. (All Risk), also located in St. Petersburg, Florida. All Risk asserted that there were unreported incidents relating to the operation of the water park and that they constituted a breach of policy conditions.

12. On August 5, 1987, T.H.E. sent a letter to Defendant, through its president Phillip E. Mulry, which suspended the in-

surance coverage. The letter lists a street address in New Orleans, Louisiana and a post office box in St. Petersburg, Florida. Mr. Mulry also appears to be the individual who signed the July 30, 1987, correspondence from All Risk.

13. At some point in time, the parties broke off their relationship. Plaintiff in the instant action seeks allegedly earned, due, but unpaid premiums. T.H.E. has also filed suit in the Middle District of Florida seeking claims processing fees and claims paid on Defendant's behalf.

14. Defendant maintains no office in the State of Florida.

## DISCUSSION

Defendant first alleges as a basis for dismissal that it has committed no act sufficient to invoke long-arm jurisdiction. Section 48.193(1)(g), Florida Statutes, commonly known as the long-arm statute, subjects to Florida jurisdiction any person "Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state." The question is whether this Defendant, under the facts of this case, may be subjected to the jurisdiction of this Court by applying the long-arm statute to those facts.

In deciding whether jurisdiction is conferred on this Court over these non-resident Defendants, two questions must be posed and answered in the affirmative: First, the Court must find that Defendants are amenable to service under a section of the long-arm statute, and, additionally, does the assertion of jurisdiction comport with due process. *Davis v. Pyrofax Gas Corp.*, 492 So.2d 1044 (Fla.1986).

Even where there is facial jurisdiction under the Florida long-arm statute, the party over which jurisdiction is asserted must have had sufficient minimum contacts with Florida to satisfy due process requirements. *Lakewood Pipe of Texas, Inc. v. Rubaii*, 379 So.2d 475 (Fla. 2d D.C.A.1979), citing, *Rebozo v. Washington Post Co.*, 515 F.2d 1208 (5th Cir.1975) and *Jack Pickard Dodge, Inc. v. Yarbrough*, 352 So.2d 130 (Fla. 1st D.C.A.1977).

Federal due process imposes certain restraints on a state's long-arm statute. *Poston v. American President Lines, Ltd.*, 452 F.Supp. 568, at 572 (S.D.Fla.1978). The Supreme Court has reaffirmed constitutional due process dictates in regard to exercise of personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–474, 105 S.Ct. 2174, 2181–83, 85 L.Ed.2d 528 (1985).

The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties, or relations." *International Shoe Co. v. Washington*, 326 US, [310] at 319, 90 L Ed 95, 66 S Ct 154, [at 160], 161 ALR 1057. By requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," *Shaffer v. Heitner*, 433 US 186, 53 L Ed 2d 683, 97 S Ct 2569 (1977) (Stevens, J., concurring in judgment), the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," *World–Wide Volkswagen Corp. v. Woodson*, 444 US 286, 297, 62 L Ed 2d 490, 100 S Ct 559 [567] (1980).

Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, *Keeton v Hustler Magazine, Inc.*, 465 US [770], [774], 79 L Ed 2d 790, 104 S Ct 1473, 1478 (1984), and the litigation results from alleged injuries that "arise out or relate to" those activities,...

Notwithstanding these considerations, the constitutional touchstone remains whether the defendant purposefully established "minimum contacts" in the forum State. *International Shoe Co. v. Washington*, supra, [326 U.S.] at 316, 90 L Ed 95, 66 S Ct 154 [158] 161 ALR 1057 ... "the foreseeability that is critical to due process analysis ... is that the *de-*

*fendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."* (Cite omitted) (Footnotes omitted) (Emphasis added).

The complaint asserts that Defendant failed to make payments due to be paid in the State of Florida. Allegations that Defendant failed to make payments as required by the parties agreement is sufficient to bring this action within the ambit of Section 48.193(1)(g), Fla.Stat. *Unger v. Publisher Entry Service, Inc.,* 513 So.2d 674 (Fla. 5th D.C.A.1987). However, this only satisfies the first of the questions that have to be answered in the affirmative to confer jurisdiction.

The second question is whether or not this assertion of jurisdiction comports with due process. In *In re Magnacard, Inc.,* [1987 WL 49528] (1–28–87), this Court adopted the reasoning of *National Equipment Leasing, Inc. v. Watkins,* 471 So.2d 1369, 1370–1371 (Fla. 5th D.C.A.1985):

A judicial holding that solely by failing to make contractual payments due in any foreign state the payor impliedly consents to submit himself to the jurisdiction of such foreign state and impliedly agrees that it is reasonable to expect him to defend law actions in such foreign state, exceeds the bounds of common sense and reason and of constitutional due process....Where a non-resident debtor's *only contact with a forum state is that he did not pay money* that, contractually, he owed and should have paid in the forum state, other courts have held that the debtor had insufficient contacts with the forum state to satisfy due process standards. (Cite omitted) (Footnotes omitted) (Emphasis added).

■ The Court, upon review of the facts of this case, concludes that the requirements of due process are met herein. Defendant contacted Plaintiff, at a Florida address, after seeing its ad in a trade journal. Defendant requested Plaintiff to represent it in trying to obtain liability insurance for its water park. Plaintiff on request of Defendant agreed to finance the premiums for the insurance policy. All payments were made to Plaintiff in Florida. The Court finds that Plaintiffs have established sufficient minimum contacts with Florida as to Defendant in order to satisfy due process.

■ The second allegation of the motion to dismiss is that Plaintiff has failed to obtain appropriate personal service on Defendant. The appropriate statute governing service of process in this cause is Section 48.194, Fla.Stat., which provides for service on:

a. The president, vice-president or other head of the corporation.

b. In the absence of persons described in a, the cashier, treasurer, secretary, or general manager.

c. In the absence of persons described in a or b, any director.

d. In the absence of persons described in a, b, or c, any officer or business agent residing in the state.

Exhibit C to the response to the motion to dismiss is a return of service from the Sheriff of Summit County, Ohio. The return of service states service was accomplished by serving the complaint on Peter J. Hlavin, Vice–President, on August 10, 1988. Plaintiff having now complied with Section 48.194, Fla.Stat., the Court denies the motion to dismiss as to this issue.

The final issue raised by Defendant is that even if there is *in personam* jurisdiction that transfer to the Northern District of Ohio is appropriate. As this Court has stated above jurisdiction does exist in this forum; however, 28 U.S.C. § 1404(a) permits the transfer of a case for the convenience of the parties, convenience of the witnesses, and in the interests of justice.

In making the determination of whether the requested transfer will be in the interest of justice and for the convenience of the parties and witnesses, the Court must "strike a balance on convenience between those elements which weigh in favor of transferring ... and those which favor allowing plaintiff's choice of forum to stand undisturbed." *Umbriac v. American Snacks, Inc.,* 388 F.Supp. 265, 269 (E.D.Pa. 1975). While the Court recognizes that

882

consideration of any number of factors may be relevant to the question of transfer, ultimately the resolution of the question is for the Court's discretion. *Poncy v. Johnson & Johnson,* 414 F.Supp. 551, 553 (S.D.Fla.1976).

In determining the propriety of transfer, the Court must give considerable weight to Plaintiff's choice of forum. *Intergraph Corp. v. Stottler, Stagg & Associates,* 595 F.Supp. 976, 978 (N.D.Ala.1984). Only if Plaintiff's choice is clearly outweighed by considerations of convenience, cost, judicial economy, and expeditious discovery and trial process should this Court disregard the choice of forum and transfer the action.

█ As is clear from the motion and the response, one party or another will be inconvenienced depending on the ultimate forum where this cause is litigated. Both sides have presented to the Court the factors which they assert are determinative of their position.

This Court in denying the transfer has considered all the circumstances presented in support of or in opposition to the motion. This Court finds that the defendant has not sufficiently established that their convenience and cost or judicial economy and expeditiousness "clearly outweigh" Plaintiff's choice of forum. Accordingly, it is

ORDERED that the motion to dismiss or to transfer be denied.